UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTA PARTNERS, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>BITFUFU INC.,<br><br>        Defendant. | Case No. 1:24-cv-06849-JPC-GWG |

**AMENDED COMPLAINT**

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant BitFuFu Inc. ("BitFuFu") for breach of contract and alleges as follows:

1. Alta brings this action to remedy BitFuFu's breaches of an agreement governing public warrants (the "Public Warrants").

2. The Public Warrants were originally issued by Arisz Acquisition Corp. ("Arisz"), a special purpose acquisition company or "SPAC." Arisz issued the Public Warrants pursuant to a warrant agreement dated November 17, 2021 between Arisz and Continental Stock Transfer & Trust Company ("Continental") (the "Warrant Agreement"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit A**.

3. On February 29, 2024, BitFuFu and Arisz announced the completion of a business combination (the "Business Combination") pursuant to which BitFuFu expressly assumed all obligations of the Warrant Agreement.

4. In addition, Arisz, BitFuFu, and Continental entered into a supplemental warrant agreement dated December 19, 2023 (the "Supplemental Warrant Agreement"), pursuant to which BitFuFu expressly assumed all of Arisz's obligations under the Warrant Agreement.

5. Pursuant to the Warrant Agreement's clear, unambiguous terms, Public Warrant holders are entitled to exercise a right to buy three-fourths of one ordinary share of Arisz's common stock at a price of $11.50 per full share in the event that three conditions are met. First, Arisz must have completed a business combination. Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must be registered under the Securities Act via an effective registration statement. Third, at the time of exercise, there must be a current prospectus relating to such Warrant Shares.

6. On March 4, 2024, Alta owned 295,595 Public Warrants. Alta was ready, willing, and able to exercise the Public Warrants and submitted multiple notices of exercise to Continental, which acts as the transfer agent under the Warrant Agreement and processes requests to exercise the Public Warrants.

7. At the time, the Public Warrants were exercisable because each of the three conditions precedent in the Warrant Agreement were satisfied. First, Arisz completed the Business Combination with BitFuFu on February 29, 2024. Second, the Warrant Shares were registered via an effect registration statement on BitFuFu's Form F-4, which was reviewed by the U.S. Securities and Exchange Commission (the "SEC") and declared effective on February 6, 2024 (the "Form F-4"). Third, the prospectus relating to the Warrant Shares was then-current.

8. Despite the fact that all three conditions had been met and the Public Warrants were exercisable, BitFuFu improperly and unlawfully blocked Alta's attempts to exercise its Public Warrants.

9. Specifically, BitFuFu had not provided Continental with legal authorization to permit exercises and had not given Continental the necessary paperwork that would have permitted

-3-

Continental to process Alta's exercise notices on March 4, 2024. This prevented Alta from buying BitFuFu shares for $11.50 per share and selling them for a higher price.

10. BitFuFu belatedly acknowledged that the Public Warrants were exercisable on March 4, 2024. But by the time BitFuFu admitted this and offered to begin processing exercising notices, its shares were trading below the $11.50 strike price and the Public Warrants were "out of the money."

11. In addition, Alta's assignor owned 800,000 Public Warrants and was ready, willing, and able to exercise the Public Warrants following the completion of the Business Combination when BitFuFu's shares were trading for more than $11.50 per share. Because BitFuFu failed to have the Public Warrants ready for exercise following the completion of the Business Combination, BitFuFu also prevented Alta's assignor from buying BitFuFu shares for $11.50 per share and selling them for a higher price.

12. By preventing Alta and its assignor from exercising the Public Warrants and selling the underlying shares, BitFuFu directly caused damages to Alta and its assignor.

13. Alta now seeks damages arising from BitFuFu's failure to have the Public Warrants ready to be exercised following the completion of the Business Combination.

**PARTIES**

14. Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

15. Alta is the registered holder of 295,595 Public Warrants of BitFuFu.

16. Non-party NAIM Holdings Inc. (the "Assignor") is the registered holder of 800,000 Public Warrants. Pursuant to an Assignment of Claims, the Assignor agreed to absolutely and unconditionally assign to Alta all of its right, title, and interest in and to, arising under or in

connection with, Assignor's claims against BitFuFu related to its ownership of the Public Warrants.

17. Defendant BitFuFu, Inc. is a Cayman Islands company with its principal place of business in Singapore.

**JURISDICTION AND VENUE**

18. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and BitFuFu and the amount in controversy substantially exceeds $75,000.

19. This Court may exercise personal jurisdiction over BitFuFu pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. Section 9.3 of the Warrant Agreement provides that Arisz agreed that "any action, proceeding or claim … arising out of or relating in any way to this Warrant Agreement shall be brought and enforced in the courts of the State of New York or the United States District Court for the Southern District of New York." Arisz further agreed to "irrevocable submit[] to such jurisdiction, which jurisdiction shall be exclusive" and "waive[d] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

**FACTS**

**A. Arisz & BitFuFu's Business Combination**

20. A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company to combine with in a business combination that provides the target company with capital and brings it public as an alternative to the traditional initial public offering process.

21. This take-public transaction is usually referred to as a "de-SPAC" transaction. Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company.

22. In 2022, Arisz announced a business combination with BitFuFu, a cryptocurrency cloud mining services provider. BitFuFu would become a publicly listed company that would be listed on the Nasdaq stock market and trade under the new ticker symbol "FUFU."

**B. The Warrant Agreement**

23. The Public Warrants at issue were issued pursuant to the Warrant Agreement between Arisz and Continental Stock Transfer & Trust Company.

24. Pursuant to Section 4.5 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the closing of the Business Combination to change the Public Warrants' issuer from Arisz to BitFuFu.

25. In addition, BitFuFu expressly assumed the obligations of the Warrant Agreement pursuant to the Supplemental Warrant Agreement.

26. The terms and conditions of the Warrant Agreement are expressly incorporated into each Public Warrant certificate and are enforceable against BitFuFu by each Public Warrant holder.

27. Pursuant to Sections 3.2 and 3.3.1 of the Warrant Agreement, the Public Warrants are exercisable following the completion of Arisz's business combination, provided the Warrant Shares are registered under the Securities Act and a prospectus relating to the Warrant Shares is current. The Warrant Agreement sets the exercise price as $11.50 per whole share.

28. Pursuant to Section 7.4 of the Warrant Agreement, BitFuFu was obligated to "as soon as practicable, but in no event later than thirty (30) business days after the closing of a

business combination," use "its best efforts to file with the SEC a registrations statement for the registration under the Act of the shares of Common Stock issuable upon exercise of the Warrants." BitFuFu was also required "to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants."

### C. The Public Warrants Were Exercisable Beginning on February 29, 2024

29. Alta and the Assignor were not able to exercise the Public Warrants beginning on February 29, 2024 despite all of the conditions precedent in the Warrant Agreement being satisfied.

30. At the time, Arisz had already completed the Business Combination with BitFuFu. In addition, the Warrant Shares were registered via BitFuFu's Form F-4 and the prospectus relating to the Warrant Shares was then-current.

31. First, the prospectus related to the Warrant Shares in the Form F-4 was current because it, among other things, included detailed financial information concerning BitFuFu, Arisz, and the combined company. For example, the Prospectus included audited financial statements for Arisz as of September 30, 2022 and September 30, 2023 and audited financial statements for BitFuFu as of December 31, 2021 and 2022.

32. Second, the Form F-4 made clear that it registered the Warrant Shares. Among other things, the Calculation of Filing Fee Tables to the Form F-4 listed the "5,382,292 Class A Ordinary Shares underlying the Arisz Warrants [the Public Warrants]" and calculated a corresponding registration fee for the Warrant Shares.

33. Upon information and belief, BitFuFu and/or Arisz paid the registration fee associated with the registration of the Warrant Shares.

-7-

34. If BitFuFu had intended to exclude the Warrant Shares from registration on the Form F-4—which, in any event, it could not do according to SEC regulations—it would not have paid to register them. Nor would the Form F-4 have specifically and expressly referenced the Warrant Shares as being registered pursuant to the Form F-4.

35. The Proxy Statement and Prospectus for the Form F-4 also confirmed that it was a prospectus with respect to the issuance of, among other things, the Warrant Shares.

36. For example, the Proxy Statement and Prospectus stated that it was a prospectus related to the issuance of, among other things, "the PubCo Class A Ordinary Shares underlying the PubCo Warrants," i.e., the Warrant Shares.

37. The Proxy Statement and Prospectus also stated that the Public Warrants "will become exercisable on the later of the completion of Arisz's initial Business Combination or 12 months from the closing of the IPO." The only way that the Public Warrants would become exercisable upon the completion of the Business Combination would be if the Warrant Shares were already registered before this date on the Form F-4.

38. The Form F-4 did not include any statement or disclosure that the Warrant Shares were not being registered on the Form F-4.

39. In addition, the Form F-4 did not include any statement or disclosure that holders of the Public Warrants may not be able to exercise the Public Warrants after completion of the Business Combination or that the Public Warrants would be exercisable only if the Warrant Shares were covered by an additional registration statement that would become effective, if at all, at an unknown time in the future.

40. Based on the Form F-4, BitFuFu represented to the investing public generally that once the Form F-4 was declared effective by the SEC, the Warrant Shares would be registered and,

assuming the prospectus remained current, the Public Warrants would become exercisable following completion of the Business Combination.

41. Indeed, SEC regulations, as well as the instructions for Form F-4, make clear that the Form F-4 may be used to register **both** warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer. *See* 17 C.F.R. § 239.25; 17 C.F.R. § 230.145(a)(2); 17 C.F.R. § 230.415(a)(1)(viii); Securities and Exchange Commission, *Edgar Filer Manual (Volume II)* at 3-27, 3-42 (Dec. 2020), https://www.sec.gov/info/edgar/forms/edgform.pdf.

42. Moreover, the SEC's published interpretations of its rules confirm that the Warrant Shares were ***required to be*** registered on the Form F-4. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is convertible or exercisable into the underlying security within one year of an offering, then the offering of both the warrant and the underlying security is deemed to be taking place and "the underlying securities ***must be registered*** at the time the offer and sale of the convertible securities are registered" (emphasis added)).

43. In addition, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4 (the domestic issue equivalent of the Form F-4), has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock." Expert Report of John J. Huber, ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, No. 22-cv-03476 (S.D.N.Y. Aug. 30, 2022).

**D. Alta's Attempts to Exercise the Public Warrants.**

44. Beginning on February 27, 2024, Alta made multiple attempts to contact BitFuFu to confirm that the Public Warrants were exercisable following completion of the Business Combination. Alta's emails to BitFuFu went unanswered.

45. On March 4, 2024, Alta submitted notices of exercise for the Public Warrants to Continental. Alta was ready, willing, and able to exercise the Public Warrants and did attempt to exercise the Public Warrants. Alta had purchased the Public Warrants for this exact purpose—namely to exercise the Public Warrants in the event they were exercisable and BitFuFu's shares were trading above the strike price.

46. Specifically, on March 4, 2024, Alta submitted a Notice of Cash Exercise for 256,841 Public Warrants. However, on March 4, 2024, Continental responded (with both BitFuFu and their counsel included on the response) that it did not have "legal authorization" from BitFuFu or their counsel "to permit cash exercises."

47. Later, on March 4, 2024, Alta submitted a Notice of Cashless Exercise of 256,841 Public Warrants for 48,562 shares of BitFuFu stock. However, on March 4, 2024, Continental responded (with both BitFuFu and its counsel included on the response) that it had "not received legal authorization to permit cash exercises." Nor did BitFuFu did not permit Alta's attempt to cashlessly exercise the Public Warrants.

48. Later, on March 4, 2024, Alta submitted another Notice of Cash Exercise of 1000 Public Warrants. However, BitFuFu did not acknowledge or honor this exercise request on March 4, 2024.

49. Later, on March 4, 2024, Alta submitted another Notice of Cash Exercise of 150,684 Public Warrants. However, BitFuFu did not acknowledge or honor the exercise request on March 4.

50. On March 4, 2024, after its first two exercise attempts were denied, Alta's counsel sent BitFuFu's counsel a demand letter addressing why the Public Warrants were presently exercisable and why BitFuFu's failure to honor Alta's notices of exercise was a material breach of the Warrant Agreement.

51. In the early morning hours of March 5, 2024, BitFuFu's counsel finally responded to Alta's notices of exercise acknowledging that the Public Warrants were exercisable.

52. But by this point, BitFuFu's shares were trading below $11.50 and the Public Warrants were no longer "in the money."

53. BitFuFu therefore prevented Alta from exercising its Public Warrants on March 4, 2024 by failing to provide legal authorization for exercise and failing to have the Public Warrants ready for exercise on March 4, 2024. Through such actions, BitFuFu also rendered any attempts to exercise the Public Warrants futile.

54. As a direct and proximate result of BitFuFu's failure to honor exercise of the Public Warrants on March 4, 2024 and to have the Public Warrants ready for exercise on March 4, 2024 despite the fact that the Business Combination had closed several days earlier, Alta suffered damages.

**E. It Would Have Been Futile for Assignor to Attempt to Exercise the Public Warrants.**

55. Beginning on February 29, 2024, Assignor was ready, willing, and able to exercise 800,000 Public Warrants.

56. Upon information and belief, Assignor had the capital necessary to engage in a cash exercise and would have submitted a notice of exercise for 800,000 Public Warrants on or about March 4, 2024 when BitFuFu's shares were trading above the $11.50 strike price.

57. Because BitFuFu had not provided the authorization or documentation to Continental that was necessary for the timely processing of the notices on March 4, 2024, it would have been futile for Assignor to submit a notice of exercise on that date. Assignor would have received the same response from Continental that Alta received—namely that Continental did not have "legal authorization" from BitFuFu or their counsel "to permit cash exercises."

58. As a direct and proximate result of BitFuFu's failure to honor exercise of the Public Warrants on March 4, 2024 and failure to have the Public Warrants ready for exercise on March 4, 2024, Assignor suffered damages.

### COUNT I: Breach of Contract—Failure to Timely Permit Exercise of the Public Warrants

59. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

60. The Warrant Agreement is an enforceable contract that BitFuFu expressly assumed.

61. Alta is the registered holder of 295,595 Public Warrants of BitFuFu.

62. Assignor is the registered holder of 800,000 Public Warrants of BitFuFu.

63. Pursuant to the clear and unambiguous terms of the Warrant Agreement, BitFuFu's Public Warrants were exercisable on March 4, 2024.

64. Alta and Assignor performed, or were excused from performing, their obligations under the Warrant Agreement.

65. Specifically, in connection with its attempts to exercise its Public Warrants, Alta submitted the required notices of exercise in the form set forth in the Warrant Agreement to Continental that were duly executed by Steven Cohen on behalf of Alta.

66. Alta also was ready, willing, and able to wire payment of the exercise price for the Public Warrants upon receipt of wire instructions from Continental.

67. However, because Continental did not have "legal authorization" from BitFuFu or their counsel "to permit cash exercises," Alta's exercise attempts were denied, and Continental did not provide wire instructions. As a result, Alta was prevented from tendering payment of the exercise price.

68. Further, because the Public Warrants were held in book entry form, the parties did not expect or intend that the Public Warrants were to be surrendered at Continental's physical office in New York City. Rather, the Public Warrants could and would be transferred by book entry upon exercise.

69. In any event, because BitFuFu had not provided "legal authorization" for Continental to permit cash exercises, any effort to physically surrender the Public Warrants would have been futile.

70. Alternatively, BitFuFu's failure to provide "legal authorization" for Continental to permit cash exercises prevented Alta from complying with conditions for exercise of the Public Warrants.

71. Further, in response to Alta's exercise attempts, Continental did not demand that Alta physically surrender its Public Warrants at its physical office in New York City. Accordingly, Continental waived any requirement that Alta surrender the Public Warrants at its physical office in New York City.

72. By not having the Public Warrants ready for exercise on March 4, 2024 when the Public Warrants were exercisable as of that date, BitFuFu materially breached its obligations under the Warrant Agreement.

73. As a direct and proximate consequence of BitFuFu's material breach of the Warrant Agreement, Alta and Assignor were denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT II: Breach of Contract (in The Alternative)—Failure to Timely Permit Exercise of the Public Warrants on the Basis of the Purported Lack of An Effective Registration Statement**

74. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

75. Alta and Assignor performed, or were excused from performing, their obligations under the Warrant Agreement.

76. All of the condition precedents for exercise of the Public Warrants were satisfied on March 4, 2024. As noted, Arisz had completed the Business Combination with BitFuFu, the Warrants Shares were registered on the Form F-4, and the prospectus relating to the Warrant Shares was then-current.

77. To the extent BitFuFu denied Alta's exercise attempts on the basis that the Form F-4 did not register the issuance of the Warrant Shares on March 4, 2024, BitFuFu materially breached and repudiated its obligations under the Warrant Agreement.

78. As a direct and proximate consequence of this material breach and repudiation of the Warrant Agreement, Alta and Assignor were denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT III: Breach of Contract (in The Alternative)—Failure to Maintain a Current Prospectus**

79. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

80. Alta and Assignor performed their obligations under the Warrant Agreement.

81. Pursuant to Section 7.4 of the Warrant Agreement, BitFuFu was obligated to "as soon as practicable, but in no event later than thirty (30) business days after the closing of a

business combination," use "its best efforts to file with the SEC a registrations statement for the registration under the Act of the shares of Common Stock issuable upon exercise of the Warrants." BitFuFu was also required "to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants."

82. Alternatively, to the extent that BitFuFu denied exercise of the Public Warrants on the basis that the prospectus relating the Warrant Shares was not current as of March 4, 2024, BitFuFu breached its obligation to maintain a current prospectus relating to the Warrant Shares until the expiration of the Public Warrants.

83. As a direct and proximate consequence of this material breach of the Warrant Agreement, Alta and Assignor were denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT IV: Breach of the Implied Covenant of Good Faith and Fair Dealing**

84. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

85. The Warrant Agreement contains an implied covenant of good faith and fair dealing, obligating the parties to implement the Warrant Agreement as intended and barring them from taking actions to undercut the Warrant Agreement's purpose.

86. In addition to its breaches of the express terms of the Warrant Agreement, BitFuFu also breached its duty of good faith and fair dealing by taking deliberate steps to prevent Alta from exercise the Public Warrants in accordance with Alta's rights under the Warrant Agreement, including by:

  a. failing to provide Continental with the authorization and documentation necessary for the timely processing of notices of exercise for the Public Warrants;

  b. waiting to respond to Alta's exercise notices until after the close of trading on March 4, 2024 and after BitFuFu's shares were no longer trading above the strike price; and,

  c. claiming that Alta's exercise notices had errors or omissions as an eleventh-hour excuse to justify its breaches of the Warrant Agreement.

87. The duty of good faith and fair dealing prohibits BitFuFu from unreasonably delaying responding to Alta's notices of exercise when that delay has the effect of depriving Alta of the benefit of its bargain. BitFuFu breached the duty of good faith and fair dealing by not responding to Alta's notice of exercise in a timely manner.

88. The duty of good faith and fair dealing also required BitFuFu to accept notices of exercise and subscription forms that substantially complied with the terms of the Warrant Agreement. To the extent that BitFuFu did not timely process Alta's exercise attempts on the basis that they contained scrivener's or non-substantive errors, BitFuFu breached the duty of good faith and fair dealing.

89. BitFuFu's breaches of its duty of good faith and fair dealing have had the effect of destroying or injuring Alta's right to receive the fruits of the Warrant Agreement.

90. BitFuFu has acted intentionally and knowingly to deprive Alta of the fruits of the Warrant Agreement.

91. As a direct and proximate consequence of BitFuFu's breaches of the implied covenant of good faith and fair dealing, Alta suffered damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Awarding general and compensatory damages to Alta in an amount to be determined at trial;

B. Awarding Alta costs and disbursements, including attorney's fees, related to this dispute;

C. Prejudgment and post-judgment interest; and

D. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated:  November 27, 2024
        Hartford, Connecticut

                                PLAINTIFF, ALTA PARTNERS, LLC

                                By: */s/ Jeffrey Mueller*
                                    Jeffrey Mueller
                                    Matthew Letten
                                    Day Pitney LLP
                                    242 Trumbull Street
                                    Hartford, Connecticut 06103
                                    T: (860) 275-0100
                                    F: (860) 275-0343
                                    jmueller@daypitney.com
                                    mletten@daypitney.com

Gregory Bruno
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, NY 10158
T: (212) 297-2452
F: (212) 602-0092
gbruno@daypitney.com

*Attorneys for Plaintiff Alta Partners LLC*