UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                         :

ALTA PARTNERS, LLC,                     :

                   Plaintiff,         :

                         :

        -v-                 :       24 Civ. 6849 (JPC) (GWG)

                         :

BITFUFU INC.,                     :       <u>OPINION AND ORDER</u>

                         :

               Defendant.      :

                         :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Alta Partners, LLC ("Alta"), a venture capital firm, ended up with the right to purchase stock in BitFuFu Inc. ("BitFuFu"), a cryptocurrency cloud mining services provider, following a business combination between BitFuFu and a special purpose acquisition company. Alta could do so by exercising public warrants, which, subject to various preconditions, entitled Alta to purchase three-fourths of one ordinary BitFuFu share at a specified strike price per each warrant held. But when, days after the combination took place, BitFuFu's share price climbed above the strike price of Alta's warrants, BitFuFu allegedly blocked Alta from exercising its right to purchase the company's stock. So Alta filed this civil action, alleging that BitFuFu's failure to take the necessary steps to allow warrant holders to exercise their purchase rights constitutes a breach of contract and a breach of the implied covenant of good faith and fair dealing.

      BitFuFu now moves to dismiss Alta's Amended Complaint in full for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants BitFuFu's motion to dismiss in part and denies it in part, but *sua sponte* grants Alta leave to amend.

# I. Background

## A.    Factual Background[1]

Arisz Acquisition Corp. ("Arisz"), which was a publicly traded special purpose acquisition company, completed its initial public offering ("IPO") on November 22, 2021.   King Decl., Exh. 3 ("BitFuFu Form F-4") at 13, 78, 105, 162, 168; Am. Compl. ¶ 2.   A special purpose acquisition company, or "SPAC" for short, is "a publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company to combine with in a business combination."  Am. Compl. ¶¶ 2, 20.  Such a transaction, which is commonly referred to as a "de-SPAC" transaction, "provides the target company with capital and brings it public as an alternative to the traditional initial public offering process."  *Id.* ¶¶ 20-21.  Following a successful de-SPAC transaction, "investors in the SPAC become shareholders of the target company."  *Id.* ¶ 21.

In connection with its IPO, Arisz and Continental Stock Transfer & Trust Company ("Continental") entered into a warrant agreement dated November 17, 2021, pursuant to which Arisz issued 6,000,000 public warrants (the "Warrants" or "Public Warrants").  *Id.* ¶ 2; *see* Am. Compl., Exh. A ("Warrant Agreement") at 1.   Under the Warrant Agreement, each Warrant originally "entitle[d]" its holder to purchase three-fourths of one ordinary share of Arisz's common

---

[1] The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from Alta's Amended Complaint, Dkt. 13 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").  In support of its motion to dismiss, BitFuFu also attached copies of documents and communications that it contends are referred to in Alta's Amended Complaint. *See* Dkt. 16 ("King Decl."). Because both parties rely to some extent on these materials in their briefing and because these materials are not outcome determinative for purposes of BitFuFu's motion to dismiss, the Court assumes, without deciding, that consideration of these materials is proper.

stock at an exercise price of $11.50 per whole share (the "Warrant Shares").  Warrant Agreement at 1, § 3.1; *see* Am. Compl. ¶ 5 (explaining that warrant holders were "entitled to exercise a right to buy three-fourths of one ordinary share of Arisz's common stock at a price of $11.50 per full share").  The Warrant Agreement designated Continental as a transfer agent in connection with "the issuance, registration, transfer, exchange, redemption and exercise" of the Warrants.  Warrant Agreement at 1.

Pursuant to the Warrant Agreement, Warrants could only be exercised during the defined "Exercise Period" and in one of two ways: through either a "Cash Exercise" or a "Cashless Exercise."  *Id.* §§ 3.2-3.3.  As defined in the Warrant Agreement, the Exercise Period commenced on the later of Arisz's "initial business combination" or twelve months following the closing of the public offering of which the Warrants, issued pursuant to the Warrant Agreement, formed a part.  *Id.* § 3.2; *see* Am. Compl. ¶ 37.  Given that Arisz did not complete its initial business combination within twelve months after its public offering, *see infra*, the Warrant Agreement effectively established three conditions for a Cash Exercise: (1) that Arisz completed an initial business combination; (2) that the Warrant Shares are "registered under the Securities Act via an effective registration statement"; and (3) that there is a "current prospectus relating to such Warrant Shares."  Am. Compl. ¶¶ 3, 5; Warrant Agreement § 3.3.1; BitFuFu Form F-4 at 13.  A Cashless Exercise, however, was allowed under the Warrant Agreement "if there [was] no effective registration statement registering the Warrant Shares" and "more than 90 days [had] passed since [Arisz] completed its initial business combination."  Warrant Agreement § 3.3.2.

On February 29, 2024, Arisz completed a business combination with BitFuFu.  Am. Compl. ¶¶ 3, 22.  Following that transaction, BitFuFu became a publicly listed company, trading on the Nasdaq under the ticker symbol "FUFU."  *Id.* ¶ 22.  Ahead of the February 2024

combination, Arisz, BitFuFu, and Continental agreed that BitFuFu would assume all of Arisz's obligations under the Warrant Agreement. *Id.* ¶ 4; *see* King Decl., Exh. 2 ("Supplemental Warrant Agreement"). Specifically, the Supplemental Warrant Agreement amended the Warrant Agreement by providing that all references to Arisz (as "the Company") would instead refer to BitFuFu, and that the common stock comprising the Warrant Shares would be deemed to mean BitFuFu's Class A ordinary shares. *See* Supplemental Warrant Agreement at 2, § 2(a). Continental continued to serve as the transfer agent under the amended Warrant Agreement. *Id.* at 1; Am. Compl. ¶ 6.

Alta was the owner of 295,595 Warrants. Am. Compl. ¶ 6. Alta alleges that pursuant to the terms of the Warrant Agreement, the Warrants were exercisable as of February 29, 2024. *Id.* ¶¶ 7, 29. That is, as of the date that Arisz and BitFuFu had completed the business combination, the Warrant Shares were registered via an effective Form F-4 registration statement, and a current prospectus relating to the Warrant Shares was in effect. *Id.* ¶¶ 30-43. Nevertheless, Alta alleges that Warrant holders were unable to exercise their Warrants because "BitFuFu had not provided Continental with legal authorization to permit exercises and had not given Continental the necessary paperwork that would have permitted Continental to process" exercise requests. *Id.* ¶ 9.

To that end, Alta alleges that it struggled to exercise its Warrants in the days following Arisz and BitFuFu's business combination. *Id.* ¶¶ 44-54. Starting on February 27, 2024, two days before the business combination, Alta allegedly made "multiple attempts to contact BitFuFu" to confirm that the Warrants would be exercisable following the combination, but "Alta's emails to BitFuFu went unanswered." *Id.* ¶ 44. Then, on March 4, 2024, Alta alleges that despite being "ready, willing, and able" to exercise its Warrants and submitting "multiple notices of exercise to Continental," Continental failed to process Alta's attempts to exercise its Warrants due to a lack

of "legal authorization" from BitFuFu. *Id.* ¶¶ 6, 46-49. First, at 9:38 a.m. that day, Alta submitted a Notice of Cash Exercise to its contact at Continental, seeking to exercise 1,000 Warrants "as a trial run." King Decl., Exh. 5 at 3 (email from Alta to Continental); *see* King Decl., Exh. 5a (Notice of Cash Exercise).[2] Alta explained that once the "initial exercise has gone through," it would "exercise [its] remaining [W]arrants." King Decl., Exh. 5. Continental, however, quickly responded that it did "not currently have the required legal authorization to permit cash exercises" and had "reached out to [BitFuFu] and their counsel." *Id.* at 2.

Alta alleges that its subsequent efforts to exercise its Warrants on March 4 did not fare any better. Later that morning, at 10:19 a.m., Alta submitted a Notice of Cash Exercise for 150,684 Warrants, which "BitFuFu did not acknowledge or honor" on March 4. Am. Compl. ¶ 49; King Decl., Exhs. 6 at 3-4, 6a. At 11:34 a.m., Alta then submitted another Notice of Cash Exercise, this time for 256,841 Warrants, Am Compl. ¶ 46; King Decl., Exh. 7 at 2-3, but Continental again replied that it "did not have 'legal authorization' from BitFuFu or their counsel 'to permit cash exercises,'" Am. Compl. ¶ 46; *see* King Decl., Exh. 7 at 2 (email from Continental to Alta, stating: "As previously indicated, we currently have no legal authorization from the company or their counsel to permit cash exercises."). Then, at 1:24 p.m., Alta submitted a purported Notice of Cashless Exercise pertaining to 256,841 Warrants, but "BitFuFu did not permit Alta's attempt" to do so. Am. Compl. ¶ 47; King Decl., Exh. 8 at 3-4.

Frustrated with what it saw as Continental's wrongful failure to honor its attempts to exercise its Warrants, Alta sent a demand letter to BitFuFu's counsel in the afternoon of March 4, arguing that the Warrants "were presently exercisable" and that "BitFuFu's failure to honor Alta's

---

[2] Because Exhibits 5 through 9 of the King Declaration lack original pagination, the Court will cite to those email chains using the ECF-generated page numbers.

notices of exercise was a material breach of the Warrant Agreement."  Am. Compl. ¶ 50; *see* King Decl., Exhs. 9 at 2-3, 9a (Alta demand letter).  BitFuFu's counsel responded to that demand letter "in the early hours of March 5, 2024."  Am. Compl. ¶ 51; King Decl., Exh. 6 at 2 (email from BitFuFu's counsel to Alta, stating: "please send us a corrected version of the signed cash exercise notice . . . and wire the funds as per section 3. 3. 1 of the [W]arrant [A]greement").  Alta alleges, however, that by March 5, BitFuFu's shares were "trading below $11.50" per share, meaning that the Warrants "were no longer 'in the money,'" Am. Compl.  ¶ 52—*i.e.*, at that point, exercising the Warrants would not have been profitable, *id.* ¶¶ 9-12.  So it appears that Alta then withdrew its Notices of Exercise.  *See* King Decl., Exhs. 6 at 2, 7 at 2, 8 at 2, 10 at 2; *see also* Am. Compl. ¶¶ 52-53 (alleging that BitFuFu's actions "rendered any attempts to exercise the Public Warrants futile").

As a result of BitFuFu's alleged failure to take the necessary steps to ensure that the Warrants were exercisable, Alta alleges that it missed out on profits that it otherwise would have realized on March 4, 2024.  Am. Compl. ¶¶ 54, 73.  If it had been afforded the ability to do so, Alta maintains, it would have exercised all 295,595 Warrants that it held as of March 4.  *Id.* ¶¶ 6, 61.  Alta also alleges that another entity, NAIM Holdings, Inc. ("NAIM"), held 800,000 Warrants as of March 4 and similarly suffered damages as a result of BitFuFu's alleged breach.  *Id.* ¶¶ 16, 55-58.  At some point after March 4,[3] NAIM "agreed to absolutely and unconditionally assign to

---

[3] Alta's Amended Complaint does not specify when NAIM assigned its claims against BitFuFu relating to the 800,000 Warrants.  The Court infers that this assignment occurred at some point after March 4, 2024.  *See* Am. Compl. ¶ 11 (alleging that NAIM "was ready, willing, and able to exercise" the Warrants while the Warrants were in the money); *id.* ¶ 56 (alleging that NAIM "would have submitted a notice of exercise for 800,000 Public Warrants on or about March 4, 2024 when BitFuFu's shares were trading above the $11.50 strike price").

Alta all of its right, title, and interest in and to, arising under or in connection with, [NAIM's] claims against BitFuFu related to its ownership of the Public Warrants." *Id.* ¶ 16.

**B.    Procedural History**

Alta filed this civil action against BitFuFu on September 11, 2024.  Dkt. 1.  Through an Amended Complaint filed on November 27, 2024, Alta asserts causes of action against BitFuFu for breach of contract relating to BitFuFu's alleged failure to permit timely exercise of the Warrants held by Alta and NAIM (Count I), Am. Compl. ¶¶ 59-73; breach of contract (in the alternative) for failure to maintain an effective registration statement (Count II), *id.* ¶¶ 74-78; breach of contract (in the alternative) for failure to maintain a current prospectus (Count III), *id.* ¶¶ 79-83; and breach of the implied covenant of good faith and fair dealing (Count IV), *id.* ¶¶ 84-91.

On December 18, 2024, BitFuFu moved to dismiss the Amended Complaint in full for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkts. 15, 16, 17 ("Motion").  Alta opposed BitFuFu's motion on January 8, 2025, Dkt. 21 ("Opposition"), and BitFuFu filed a reply brief the following week, Dkt. 22 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, the Rule 12(b)(6) plausibility standard requires factual allegations sufficient to "'raise a reasonable

expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

These factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it "need not consider conclusory allegations or legal conclusions couched as factual allegations," *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). As a result, a complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. Discussion

Through its motion to dismiss, BitFuFu challenges each of Alta's causes of action as inadequately pleaded under Rule 12(b)(6). As to Count I, BitFuFu argues that the Amended Complaint fails to plausibly allege that BitFuFu breached any provision of the Warrant Agreement or that Alta substantially performed its own obligations under the contract. Motion at 10-13. BitFuFu further contends that Count I fails on the ground that Alta "voluntarily withdrew" its Notices, and so cannot now seek to claim the benefits of "an exercise it . . . opted to forgo." *Id.* at 13. With respect to Counts II and III, which allege breach of contract under the alternative theories that BitFuFu failed to maintain an effective registration statement and current prospectus, respectively, BitFuFu contends that those claims are moot because BitFuFu is not asserting that

the Warrants were not exercisable by virtue of the lack of a valid registration statement or prospectus. *Id.* at 14. BitFuFu also argues, with respect to Count IV, that Alta's theory of breach of the implied covenant is duplicative of its claim for breach of contract in Count I. *Id.* at 14-15. Finally, BitFuFu asserts that Alta cannot recover damages for Warrants that neither it nor NAIM attempted to exercise. *Id.* at 15-16.

The Court considers the plausibility of each of Alta's claims for relief in turn.

## A.    Count I

To state a claim for breach of contract under New York law,[4] "a plaintiff must allege that (1) a valid agreement was formed; (2) plaintiff performed or would have performed his obligations under the agreement; (3) defendant breached the agreement through no fault of plaintiff; and (4) plaintiff was damaged as a result of the breach." *Panteleone v. Env't Eng'g & Contracting*, No. 12 Civ. 5415 (JG), 2013 WL 3340483, at *7 (E.D.N.Y. July 2, 2013) (citing *Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536, 542 (2d Cir. 1989)).

Here, Alta asserts claims for breach of the Warrant Agreement as to both the 295,595 Warrants that Alta itself owned (and allegedly sought to exercise) on March 4, 2024, and the 800,000 Warrants that NAIM owned as of that date. Am. Compl. ¶¶ 61-62. For the following reasons, the Court concludes that Alta's Amended Complaint plausibly alleges a claim for breach of contract as to Alta's own Warrants, but not as to the Warrants held by NAIM.

---

[4] The Warrant Agreement and the Supplemental Warrant Agreement each contains a choice-of-law provision selecting "the laws of the State of New York." Warrant Agreement § 9.3; Supplemental Warrant Agreement § 5(c). The parties also apply New York law in their briefs. *See, e.g.*, Motion at 10, 14; Opposition at 7, 16, 21-22. The Court therefore applies New York law to this dispute. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks and alteration omitted)).

### 1. Alta's Warrants

BitFuFu principally challenges Alta's claim for breach on the grounds that the Amended Complaint does not identify any provision of the Warrant Agreement that BitFuFu could have breached and does not sufficiently allege that Alta performed its own obligations under the contract. Motion at 10. As BitFuFu correctly observes, "New York law and the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) (internal quotation marks omitted); *see* Motion at 10. Thus, dismissal under Rule 12(b)(6) is required when the complaint "fails to identify the specific term in the contract" that the defendant allegedly breached. *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 451 (S.D.N.Y. 2022).

Under these principles, however, Alta's Amended Complaint passes muster at this stage. The Amended Complaint attaches the Warrant Agreement in full and identifies Section 3 as the portion that BitFuFu allegedly breached. Am. Compl. ¶ 27; *see* Warrant Agreement. In light of BitFuFu's assumption of Arisz's contractual obligations, *see* Supplemental Warrant Agreement, Section 3.1 provides that each Warrant "entitle[s] the [holder], subject to the provisions of such Warrant and of this Warrant Agreement, to purchase from [BitFuFu] the number of shares of Common Stock stated therein, at $11.50 per whole share, subject to the adjustments provided in Section 4 hereof." Warrant Agreement § 3.1. Section 3.2 provides, in relevant part, that Warrants "may be exercised" by their holders during the Exercise Period, Warrant Agreement § 3.2, which Alta alleges began upon Arisz's business combination with BitFuFu in February 2024, Am. Compl. ¶¶ 5, 7, 13. Section 3.3.1, meanwhile, adds that subject to a registration statement and

prospectus being in effect for the Warrant Shares, "[a] Cash Exercise . . . is available to" Warrant

holders during the Exercise Period.  Warrant Agreement §§ 3.2, 3.3.1.

Alta alleges that these preconditions for a Cash Exercise—a business combination, the

registration of Warrant Shares pursuant to an effective registration statement, and a current

prospectus in effect—were satisfied as of February 29, 2024.  Am. Compl. ¶¶ 7, 29-43.  But despite

the Warrant Agreement effectively providing that the Warrants "may be exercised" on March 4

and that a Cash Exercise would be "available" on that date, Alta alleges that, in reality, it was not

possible for Warrant holders to effect Cash Exercises at that time because BitFuFu had failed to

authorize its transfer agent, Continental, to process their Notices of Exercise.  *Id.* ¶ 9; *see* Warrant

Agreement §§ 3.2, 3.3.1; *see also* Warrant Agreement at 1 (appointing Continental as "the Warrant

Agent to act as agent for [BitFuFu] for the Warrants").  This theory is based on a reasonable

interpretation of the language in the Warrant Agreement and is supported by plausible factual

allegations that, by virtue of BitFuFu's failure to authorize Continental to process Cash Exercises,

such exercises were not "available" on March 4, thereby violating Alta's "entitle[ment]" to

exercise its Warrants.  Warrant Agreement §§ 3.1, 3.3.1.  At this stage, that is enough to identify

the provisions of the Warrant Agreement that gave rise to the alleged breach.[5]

BitFuFu also argues that Alta's breach of contract claim fails because Alta failed to perform

its obligations under the Warrant Agreement for a Cash Exercise.  Motion at 10.  Specifically,

BitFuFu argues that contrary to Section 3.3.1 of the Warrant Agreement, Alta failed to surrender

its Warrants to Continental's New York City office with a properly executed subscription form

and did not make a complete payment for the Warrant Shares that it sought to obtain through its

---

[5] Alta does not appear to separately contend that Continental and BitFuFu's refusal to process its attempted Cashless Exercise on March 4, 2024, was a breach of the Warrant Agreement.

Cash Exercises.  Motion at 1-2; *see* Warrant Agreement § 3.3.1 (providing that Warrant holders may opt for a Cash Exercise by "surrendering [their Warrants] at the office of [Continental] . . . with the subscription form" and "by paying in full" the price of the Warrant Shares).

New York law, however, recognizes that "where it becomes clear that one party will not live up to a contract, the aggrieved party is relieved from the performance of futile acts or conditions precedent."  *State St. Glob. Advisors Tr. Co. v. Visbal*, 677 F. Supp. 3d 209, 245 (S.D.N.Y. 2023) (quoting *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty*, 522 N.Y.S.2d 293 (3d Dep't 1987)); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (observing that parties to a contract are "excused from performing a futile act" or making a "useless gesture" (internal quotation marks omitted)); *Concorde Fin. Corp. v. Value Line, Inc.*, No. 03 Civ. 8020 (NRB), 2004 WL 1687205, at *4 (S.D.N.Y. July 28, 2004) ("[A]s a matter of policy, once one party has made clear it will not proceed with the contract there is no reason to require the other party to perform obligations that would be futile or even injurious.").

Alta's allegations fit comfortably within this futility exception.  According to the Amended Complaint, Alta submitted multiple Notices of Exercise on March 4, 2024, seeking to exercise a portion of its Warrants on a cash basis.  Am. Compl. ¶¶ 45-46, 48-49.  Alta alleges that in response to those efforts, Continental repeatedly affirmed that it lacked the requisite authority to process Cash Exercises.  *See id.* ¶¶ 46-47; King Decl., Exh. 5 at 2 (Continental stating to Alta: "We do not currently have the required legal authorization to permit cash exercises.  We have reached out to the company and their counsel."); King Decl., Exh. 7 at 2 (Continental stating to Alta: "As previously indicated, we currently have no legal authorization from the company or their counsel to permit cash exercises.").  In the face of Continental's repeated assertions that it lacked the ability

to permit Cash Exercises—categorical representations that did not purport to turn on any aspect of Alta's particular attempts to exercise its Warrants—it would be unreasonable to require Alta to have incurred the financial risk of surrendering its Warrants and making full payment for the Warrant Shares in order to preserve a claim for breach of contract.  Instead, under these circumstances, it is sufficient that Alta has plausibly alleged that but for BitFuFu's failure to authorize Continental to process Cash Exercises, Alta would have substantially complied with the Warrant Agreement's requirements for a Cash Exercise.  The Amended Complaint's allegations therefore satisfy the performance element of Alta's contract claim.

BitFuFu further contends that Alta's claim fails because Alta "voluntarily withdrew its notices" on March 5, 2024.  Motion at 13 (emphasis omitted).  The standard for finding a waiver of contractual rights under New York law is high, requiring a "clear manifestation of an intent by [the] plaintiff to relinquish her known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (quoting *Courtney-Clarke v. Rizzoli Intern. Publ'ns, Inc.*, 676 N.Y.S.2d 529 (1st Dep't 1998)).

Here, the Court cannot conclude that any decision by Alta to withdraw its Notices of Exercise on March 5, 2024, was a clear manifestation of intent to waive its right to pursue a claim for breach of contract involving BitFuFu's failure to allow Cash Exercises on March 4.  That is so because, even taking into account the materials presented in support of BitFuFu's motion,[6] it is clearly plausible that Alta's decision to withdraw its Notices on March 5 instead reflected its belief

---

[6] While perhaps implied from other allegations, the Amended Complaint does not allege that Alta in fact withdrew its Notices of Exercise on May 5, 2024.  *See* Am. Compl. ¶¶ 51-53; *see also* Opposition at 4-5.  Alta notes in its Opposition that such allegations are not in its Amended Complaint and argues: "To the extent that the Court even considers the argument, Alta only 'withdrew' its notices of exercise in order to avoid further losses *after* BitFuFu (through Continental) had rejected them, and after BitFuFu's stock price fell below the exercise price." Opposition at 18 (citing Am. Compl. ¶¶ 51-52).

that by that point, it no longer would have been financially advantageous to go through with the exercise of its Warrants.  *See* Am. Compl. ¶¶ 10, 52.  And BitFuFu's contention that Alta voluntarily abandoned its right to sue for breach of contract on the theory that it was prevented from exercising its Warrants on March 4 is further belied by the allegations of Alta's dogged pursuit of its right to exercise its Warrants on that day, which included sending multiple Notices of Cash Exercise and serving a demand letter on BitFuFu's counsel threatening litigation.  *See id.* ¶¶ 44-50.

Finally, BitFuFu argues that the scope of Alta's potential recovery should be limited to the Warrants that it actually attempted to exercise on March 4, 2024, as opposed to the total number of Warrants (295,595) that it owned on that date.  Motion at 15-16 (arguing that, as alleged, Alta "only sought the cash exercise of a portion" of its Warrants).  As discussed, however, Alta has plausibly alleged that it would have performed its obligations under the Warrant Agreement to exercise its Warrants, but for BitFuFu's alleged failure to enable Continental to process Cash Exercises on March 4, which the Court deems sufficient for purposes of the performance prong. *See* Am. Compl. ¶ 53.  And although Alta must allege a plausible theory of damages, it need not, at this stage, demonstrate the exact amount of those damages.  *Mohegan Lake Motors, Inc. v. Maoli*, No. 16 Civ. 6717 (NSR) (LMS), 2018 WL 11579757, at *5 (S.D.N.Y. Oct. 1, 2018) (explaining that "the precise magnitude of damages proximately caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage").  So whether Alta will be able to recover damages based on the total amount of Warrants that it owned as of March 4, or some lesser portion thereof, is therefore a question better reserved for later stages of this case.  *Id.* And in any event, drawing all reasonable inferences in favor of Alta, the Amended Complaint and the materials presented in support of BitFuFu's motion *do* plausibly show that Alta would have

exercised the full amount of its Warrants on March 4, 2024. *See* Am. Compl. ¶¶ 44-49 (alleging that Alta submitted Notices of Exercise covering the vast majority of its 295,595 Warrants); King. Decl., Exh. 5 at 3 (email from Alta to Continental stating that once the "trial run" of 1,000 Warrants went through, Alta planned to "exercise [its] remaining warrants"). The Court therefore declines, at this early stage, to limit the scope of Alta's claim to the Warrants actually covered by the Notices of Exercise it submitted on March 4.

### 2. NAIM's Warrants

Alta also asserts a claim for breach of contract based on the 800,000 Warrants that NAIM owned on March 4, 2024, alleging a theory of breach similar to that asserted in connection with the 295,595 Warrants that Alta itself held as of that date. Am. Compl. ¶¶ 11-12, 55-58. Alta's claim regarding the Warrants that NAIM held on March 4 is based on NAIM's alleged assignment to Alta of whatever causes of action it may have had against BitFuFu relating to those Warrants. *Id.* ¶ 16. As a distinct "chose in action," *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 278 (2008), Alta is therefore required to plausibly allege that NAIM itself has a viable claim against BitFuFu for breach of contract. To that end, BitFuFu argues that NAIM lacks a plausible cause of action for breach on the ground that NAIM never attempted to exercise any of its Warrants, which the Court construes in part as a challenge to Alta's allegation that NAIM suffered damages as a result of BitFuFu's alleged breach of the Warrant Agreement. *See* Motion at 15-16 (arguing that NAIM suffered no damages attributable to BitFuFu's alleged breach because NAIM "never attempted to exercise *any* of its Warrants"); Reply at 9-10 (similar).

To plausibly allege that NAIM has a plausible cause of action, it is not enough for Alta simply to allege that BitFuFu breached the Warrant Agreement and that NAIM's full performance of its obligations under the Agreement would have been "futile." Am. Compl. ¶ 57. Instead,

"factual allegations showing damages are essential: 'In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint.'" *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (quoting *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.* ("*Lexington 360*"), 651 N.Y.S.2d 490, 492 (1st Dep't 1996)).  In other words, "[a] claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11 Civ. 1534 (JG), 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011). Accordingly, when a complaint "relies . . . on wholly speculative theories of damages, dismissal of the breach of contract claim is in order." *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 Civ. 519 (RJS), 2014 WL 1383703, at *10 (S.D.N.Y. Mar. 31, 2014) (quoting *Lexington 360*, 651 N.Y.S.2d at 492); *see, e.g.*, *Bakal v. U.S. Bank Nat'l Ass'n*, 747 F. App'x 32, 36 (2d Cir. 2019) (summary order) (affirming the dismissal of a breach of contract claim where the plaintiffs' complaint failed to plausibly allege that the defendant's breach caused them any damages).

Under these principles, the Court agrees with BitFuFu that, as currently alleged, NAIM lacks a plausible cause of action for breach of contract.  Alta's theory of damages for NAIM's Warrants mirrors Alta's theory of damages regarding its own Warrants: that BitFuFu's alleged failure to take the necessary steps to make the Warrants exercisable on March 4, 2024, rendered warrant holders unable to exercise the Warrants while BitFuFu's stock was trading above the $11.50 strike price, thereby preventing Warrant holders from selling shares acquired pursuant to the Warrants at a profit that day.  Am. Compl. ¶¶ 11-12.  That damages theory, of course, is only sound to the extent that a given Warrant holder would have sought to exercise its Warrants on March 4, 2024, absent BitFuFu's alleged breach—otherwise, *every* holder of BitFuFu's Warrants

on that date would have a claim for breach of contract regardless of whether that holder would have exercised any of its Warrants.

Here, Alta alleges that NAIM "would have submitted a notice of exercise for 800,000 Public Warrants on or about March 4, 2024." *Id.* ¶ 56. But the Court "cannot take the allegation here at face value, because [Alta] has not said enough to make it plausible." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1567 (2025). That is, apart from its allegation that NAIM "had the capital necessary to engage in a cash exercise," Am. Compl. ¶ 56, the Amended Complaint provides no factual support for its assertion that NAIM, in fact, would have exercised its Warrants on March 4. The Amended Complaint, for instance, does not allege that NAIM ever inquired about the possibility of exercising its Warrants on that day or took any other steps toward that goal, such as preparing or submitting any notices of exercise or taking other actions suggestive of an intent to exercise its Warrants. Although the Court does not suggest that any particular facts would be necessary to state a plausible theory of damages, at a minimum, Alta must allege "*some* facts" tending to show that NAIM would have exercised its Warrants at the relevant time. *Keller Founds., LLC v. Zurich Am. Ins. Co.*, 758 F. App'x 22, 28 (2d Cir. 2018) (summary order). Without any such allegations, Alta has failed to nudge its allegation that NAIM suffered damages "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Count I must, therefore, be dismissed to the extent that it is based on causes of action Alta acquired from NAIM.

### B.      Counts II and III

In Counts II and III, Alta pleads alternative claims for breach of contract based on the theories that BitFuFu failed to maintain an effective registration statement or current prospectus for the Warrant Shares. Am. Compl. ¶¶ 74-83. BitFuFu moves to dismiss these claims as "moot,"

arguing that "BitFuFu does not contend that there was no effective registration statement or current prospectus." Motion at 14.

BitFuFu, however, does not support its perfunctory assertion that Counts II and III must be dismissed as "moot" with any attempt at developed argumentation or any relevant legal citations. BitFuFu, for instance, does not explain what it means by "moot" (*i.e.*, whether it is referring to Article III mootness or some other doctrine) or what legal standard the Court should apply to test whether Counts II and III fit that bill. BitFuFu, in other words, has failed to "clearly communicate [this argument] to the Court, explaining both the applicable law and its application to the [Amended Complaint]," and for that reason, "the Court disregards [BitFuFu's] arguments for dismissing [Counts II and III]." *Ikigai Mktg. Works LLC v. Brofsky*, No. 24 Civ. 7864 (AS), 2025 WL 1183975, at *4 (S.D.N.Y. Apr. 23, 2025) ("It isn't the Court's job to develop a series of one or two-sentence morsels into an argument to dismiss the complaint."). Accordingly, the Court declines to dismiss Counts II and III to the extent that they are based on causes of action relating to the Warrants that Alta itself held on March 4, 2024. But because the reasoning discussed at *supra* III.A.2 applies with equal force to Counts II and III, those Counts are dismissed as to causes of action Alta acquired from NAIM.

## C.    Count IV

BitFuFu also moves to dismiss Count IV of the Amended Complaint, which alleges a cause of action for breach of the implied covenant of good faith and fair dealing. Motion at 14.

New York law implies within every contract a covenant of good faith and fair dealing, which "encompasses any promises that a reasonable promisee would understand to be included" in the contract. *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) (citations omitted). Thus, an implied term of every contract is a promise that "[n]either party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits

of the contract, or to violate the party's presumed intentions or reasonable expectations." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citation modified).  And "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (internal quotation marks omitted).  A claim for breach of the implied covenant, however, "is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (internal quotation marks omitted).  Thus, "when a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim and seeking identical damages for the breach, the claim for the breach of the covenant of good faith and fair dealing must be dismissed as duplicative of the breach of contract claim." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017) (citing *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 894 N.Y.S.2d 47, 49-50 (1st Dep't 2010)); *see Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." (internal quotation marks omitted and alteration adopted)).

Here, Count IV alleges that BitFuFu took "deliberate steps to prevent Alta from exercis[ing] the Public Warrants in accordance with Alta's rights under the Warrant Agreement." Am Compl. ¶ 86.  Alta alleges that those "deliberate steps" included:

a.  failing to provide Continental with the authorization and documentation necessary for the timely processing of notices of exercise for the Public Warrants;

b.  waiting to respond to Alta's exercise notices until after the close of trading on March 4, 2024 and after BitFuFu's shares were no longer trading above the strike price; and,

    c. claiming that Alta's exercise notices had errors or omissions as an eleventh-hour excuse to justify its breaches of the Warrant Agreement.

*Id.* BitFuFu seeks dismissal of this claim as duplicative of Alta's claims for breach of contract, which similarly turn on BitFuFu's conduct with respect to Alta's attempts to exercise its rights under the Warrant Agreement. Motion at 14-15.

Specifically, BitFuFu argues that Alta's claim for breach of the implied covenant of good faith and fair dealing "is based on the same allegations underlying its breach of contract claims." *Id.* at 14. An overlap in factual predicate, however, does not necessarily doom an implied covenant claim at the pleading stage. That is so because while "[a] party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts," when "there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Spinelli*, 903 F.3d at 206; *see Vinci Brands LLC v. Coach Servs., Inc.*, No. 23 Civ. 5138 (LGS) (VF), 2024 WL 4370841, at *8 (S.D.N.Y. Oct. 2, 2024) ("Where . . . the meaning of a contract's terms are in dispute, a claim for breach of the covenant of good faith and fair dealing can be pled in the alternative alongside a breach-of-contract claim predicated on the same facts.").

Here, the meaning of the relevant terms of the contract is in dispute. The parties disagree about whether the Warrant Agreement's express terms created a duty on BitFuFu's part to authorize Continental to process Cash Exercises on March 4, 2024. *Compare* Opposition at 7-9 (arguing that BitFuFu breached the Warrant Agreement by failing to take the steps necessary to allow Warrants to be exercised during a time period where the conditions for exercise were met), *with* Reply at 3 (arguing that "the purported contractual obligations described by Alta are not in the contract"). And despite holding for purposes of resolving BitFuFu's motion that the Amended Complaint has alleged a plausible claim for breach, the Court expresses no view as to whether Alta

will ultimately succeed in proving a breach of the Warrant Agreement's express terms, including with respect as to whether its interpretation of the relevant provisions of the Warrant Agreement will ultimately prove to be correct.  So "because [Alta's] claim for breach of the implied covenant of good faith and fair dealing may survive even if its breach of contract claims fail, it is plausible that the two claims may be distinct." *Perrigo Pharma Int'l Designated Activity Co. v. Mead Johnson & Co.*, No. 23 Civ. 8 (ER), 2024 WL 1375947, at *19 (S.D.N.Y. Apr. 1, 2024) (explaining that an otherwise duplicative claim for breach of the implied covenant of good faith and fair dealing may proceed on an alternative basis where "the parties' disagreement relates to what they were entitled to under the contract").  Accordingly, to the extent that Count IV relies on the same factual predicate as Alta's claims for breach of contract, the Court permits Alta to maintain that claim on an alternative basis for now.

BitFuFu further argues that Alta's claim for breach of the implied covenant of good faith and fair dealing impermissibly seeks to introduce contractual terms into the Warrant Agreement that the parties did not expressly bargain for.  Motion at 15; *see Alta Partners, LLC v. Getty Images Holdings, Inc.*, 700 F. Supp. 3d 32, 47 (S.D.N.Y. 2023) (explaining that "[a] claim for breach of that covenant cannot be used to add contract terms not bargained for" (internal quotation marks omitted)).

The Court remains unpersuaded.  A plaintiff "states a claim for breach of an implied covenant of good faith by alleging conduct that while technically not constituting a breach of contract, nevertheless deprives the plaintiff of the benefit of its bargain." *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16 Civ. 6392 (JPO), 2017 WL 3600427, at *4 (S.D.N.Y. Aug. 18, 2017) (internal quotation marks omitted).  As noted, the Amended Complaint identifies three implied promises in support of Count IV: (1) that BitFuFu would take the necessary steps to enable

Continental to timely process notices of exercise for the Warrants; (2) that BitFuFu would not unreasonably delay Warrant holders' ability to exercise their Warrants; and (3) that BitFuFu would not unreasonably refuse to process notices of exercise on the basis of "scrivener's or non-substantive errors."  Am. Compl. ¶¶ 86-88.  BitFuFu has not shown that, as a matter of law, implying any of these three promises in the Warrant Agreement would "defeat[] a right that a party actually bargained for."  *Spinelli*, 903 F.3d at 206.  Nor does BitFuFu identify any reason to doubt that these three implied promises would plausibly "preserve the fruits of the contract for [Alta]" without "spoil[ing] the fruits for [BitFuFu]."  *Id.*

Accordingly, the Court declines to dismiss Count IV insofar as it relates to Alta's attempts to exercise the Warrants that Alta itself owned on March 4, 2024.  For the same reasons discussed at *supra* III.A.2, however, Alta's failure to plausibly allege damages with respect to the causes of action it acquired from NAIM also precludes its assertion of a claim for breach of the implied covenant of good faith and fair dealing regarding NAIM's Warrants.

## D.    Leave to Amend

The Court *sua sponte* grants Alta an opportunity to file a second amended complaint for purposes of correcting the deficiencies identified in this Opinion and Order regarding Alta's assertion of claims based on Warrants held by NAIM.  *See* Fed. R. Civ. P. 15(a)(2) (providing that a court "should freely give leave [to amend] when justice so requires"); *Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017) ("[A] court has the discretion to grant leave to amend *sua sponte*." (internal quotation marks omitted and alteration adopted)).  Although Alta has amended once already, the Court had not yet ruled on the plausibility of Alta's claims.  *Cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").  And it is not apparent

to the Court that the deficiencies identified in this Opinion and Order could not be fixed through further amendment. *See AK Meeting IP*, *LLC v. Epic Games*, *Inc.*, No. 23 Civ. 8214 (GHW), 2024 WL 4299686, at *9 (S.D.N.Y. Sept. 26, 2024) ("The Court cannot hold at this relatively early stage that the pleading deficiencies identified in this opinion cannot be corrected, such that amendment would be futile."). Alta, however, should only file a second amended complaint if it believes in good faith that it can correct the deficiencies identified in this Opinion and Order by alleging concrete factual allegations plausibly demonstrating that NAIM suffered damages as a result of BitFuFu's alleged breaches of contract.

### IV.  Conclusion

For these reasons, the Court grants BitFuFu's motion to dismiss to the extent that Alta's claims are based on causes of action acquired from NAIM and otherwise denies the motion. Alta may, if it chooses, file a second amended complaint on or before August 19, 2025. In the event that Alta does not file a second amended complaint, BitFuFu shall file an answer to Alta's Amended Complaint on or before September 2, 2025. The Clerk of Court is respectfully directed to close Docket Number 15.

SO ORDERED.

Dated: July 29, 2025
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

23